**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERRY MCLEAN, MARY MAROUS, JOYCE WOJTON, BEVERLY EVANS, and JENNIFER POLLOCK, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS INC., DOLLAR GENERAL CORPORATION, JO-ANN STORES, LLC, THE HOME DEPOT, INC., and WALMART INC.,<br><br>        Defendants. | Civil Action No. 2:20-cv-02000-MJH<br><br>FIRST AMENDED COMPLAINT |

**FIRST AMENDED COMPLAINT**

Plaintiffs Gerry McLean ("Mclean"), Mary Marous ("Marous"), Joyce Wojton

("Wojton"), Beverly Evans ("Evans"), and Jennifer Pollock ("Pollock") (collectively,

"Plaintiffs") individually and on behalf of all others similarly situated, bring this action against

Defendants Big Lots, Inc., Dollar General Corporation, Jo-Ann Stores, LLC, The Home Depot,

Inc., and Walmart Inc. ("Defendants"), and allege as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.       In this putative class action, Plaintiffs allege that Defendant retailers knowingly,

negligently, or deceptively falsely advertised the price of protective face masks, represented that

protective face masks were subject to Pennsylvania sales tax, and overcharged Plaintiffs in

amounts equal to and purporting to be Pennsylvania sales tax, when they were not subject to

Pennsylvania sales tax, in violation of the Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq*.

2.       The facts alleged in this matter are simple and straightforward.

1

3.     In 2020, as the ongoing coronavirus pandemic raged toward its peak, Plaintiffs purchased protective face masks from Defendants, who own, operate, or otherwise control retail sales of consumer goods, including protective face masks, in Pennsylvania.

4.     Regarding each transaction, Defendants knowingly, negligently, or deceptively advertised one price, but, implicitly representing that the masks were subject to Pennsylvania sales tax, charged Plaintiffs amounts equal to what would have been, and which Defendants purported via notation on the sales receipts to be, Pennsylvania sales tax, which Plaintiffs discovered later after reviewing their receipts.

5.     Defendants should not have required payment of or charged sales tax on protective face masks because the only reason for buying protective face masks during the pandemic was for a medical purpose and for use as everyday wear, and it is alleged, on information and belief, that Defendants only manufactured and sold such masks for a medical purpose and for use as everyday wear.

6.     Defendants also should not have required payment of or charged sales tax on protective face masks because following the pandemic and various government issued orders requiring consumers to wear protective face masks, such masks have become everyday wear and medical supplies, to the extent they were not designed or intended for such purposes.

7.     In each transaction, Defendants' conduct in advertising one price but charging another, misrepresenting that protective face masks were subject to Pennsylvania sales tax, and/or overcharging Plaintiffs in amounts equal to and purporting to be Pennsylvania sales tax caused Plaintiffs to lose those amounts of money, and the retention and use of that money, which they otherwise would have had.

8. Accordingly, Plaintiffs allege that they purchased each of the protective face masks primarily "for personal, family, and/or household use," that each Defendant acted "in the conduct of trade or commerce," that each Defendant's conduct constituted false advertising, misrepresentation, and deceptive conduct amounting to violations of subsections of the UTPCPL prohibiting retailers from, among other things: (1) "Representing that goods or services have . . . characteristics . . . that they do not have"; (2) "Advertising goods with intent not to sell them as advertised"; and/or (3) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding," and that each Defendant caused Plaintiffs to lose those amounts of money, and the retention and use of those amounts of money, which they otherwise would have had.

9. Plaintiffs request relief in the form of the statutory minimum of $100 damages for each transaction, an order declaring protective face masks to be nontaxable, and statutorily available costs and attorney's fees

## **PARTIES**

10. Plaintiffs are natural persons over the age of eighteen. Plaintiffs reside in Pennsylvania.

11. Defendants are retail companies that sell consumer goods throughout Pennsylvania.

12. Big Lots Inc. ("Big Lots") is an Ohio corporation headquartered in Columbus, Ohio. Big Lots operates brick-and-mortar and online retail stores under the Big Lots brand name. Big Lots owns, operates, or controls at least 68 brick-and-mortar retail locations in Pennsylvania.

13. Dollar General Corporation ("Dollar General") is a Tennessee corporation headquartered in Goodlettsville, Tennessee. Dollar General operates brick-and-mortar and online

3

retail stores under the Dollar General brand name. Dollar General owns, operates, or manages at least 781 brick-and-mortar retail locations in Pennsylvania.

14.     Jo-Ann Stores, LLC ("JOANN") is an Ohio limited liability company headquartered in Hudson, Ohio. JOANN operates brick-and-mortar and online retail stores under the JOANN brand. JOANN owns, operates, or manages at least 42 brick-and-mortar retail locations in Pennsylvania.

15.     The Home Depot, Inc. ("Home Depot") is a Delaware corporation headquartered in Atlanta, Georgia. Home Depot operates brick-and-mortar and online retail stores under the Home Depot brand name. Home Depot owns, operates, or manages at least 70 brick-and-mortar retail locations in Pennsylvania.

16.     Walmart Inc. ("Walmart") is a Delaware corporation headquartered in Bentonville, Arkansas. Walmart operates brick-and-mortar and online retail stores under the brand names Walmart and Sam's Club. Walmart owns, operates, or manages at least 164 brick-and-mortar retail locations in Pennsylvania.

## FACTUAL ALLEGATIONS

17.     While sales of goods in Pennsylvania generally are subject to Pennsylvania sales tax, there are many statutory exemptions. 72 P.S. §§ 7202, 7204.

18.     The two exemptions relevant here include "medical supplies" and "clothing." 72 P.S. § 7204(17), (26).

19.     "Medical supplies" include "tangible personal property for use in alleviation or treatment of injury, illness, disease or incapacity." 61 Pa. Code. § 52.1(b)(2).

4

20.    "The determination that purchases qualify for exemption as … medical supplies … is based essentially upon the use for which the purchases are intended." 61 Pa. Code § 52.1(a).

21.    "Clothing" includes "[a]rticles, including vesture, wearing apparel, raiments, garments or shoes, which are designed to cover the human body as ordinary or everyday wear," but excludes "accessories" and "ornamental wear," which are "[a]rticles, other than clothing" "designed to be worn on or about the human body" and "designed and normally worn for decorative purposes," respectively. 61 Pa. Code. § 53.1.

22.    Prior to the ongoing coronavirus pandemic, non-surgical masks were designed or normally worn as accessories or ornamental wear, *i.e.*, as part of a costume.

23.    Those masks were taxable because they were not designed or intended for medical purposes or for use as everyday wear.

24.    On and after the ongoing coronavirus pandemic, protective face masks, like the masks purchased by Plaintiffs and the members of the classes, were designed and intended to serve only medical purposes and to be used as everyday wear.

25.    These face masks were non-taxable because Defendants designed or intended them to be for medical purposes or for use as everyday wear.

26.    The retailers that sold such masks, including Defendants, knew or should have known the masks were to be used only for medical purposes and as everyday wear, as there was no other use for the masks at issue, and such masks were designed and intended to serve only medical purposes (to combat the physical spread of COVID-19) and to be used as everyday wear (to comply with government guidance and orders).

27.     To the extent such protective face masks were not specifically designed or intended for medical use or for use as everyday wear, Defendants knew or should have known such face masks fell within one or both of these non-taxable categories at and after the onset of the coronavirus pandemic.

28.     First, at and after the onset of the coronavirus pandemic, Pennsylvania residents were strongly encouraged and then ordered to wear masks to help beat back the national health crisis any time they left their homes.[1]

29.     These orders and recommendations remain in place.[2]

---

[1] *See*, *e.g.*, Claire Hansen, U.S. News, *CDC Advises All Americans to Wear Cloth Masks in Public* (Apr. 3, 2020), available at https://www.usnews.com/news/national-news/articles/2020-04-03/cdc-advises-all-americans-to-wear-cloth-masks-in-public (last accessed Mar. 30, 2021); Administrative Order, *In Re: Administrative Order Concerning The Use Of Face Masks/Coverings In Public Areas of The District's Courthouses*, Misc. No. 2:20-mc-593-MRH (W.D. Pa. Apr. 21, 2020) (ordering persons doing business in the District's courthouses to "wear a mask or face covering when in the common or public areas" in order to "reduce the possibility of exposure to novel coronavirus ("COVID-19") and slow the spread of the disease[.]"; Ex. 1, Pennsylvania Dept. of Health, *Order of the Secretary of the Pennsylvania Dept. of Health Directing Public Health Safety Measures for Businesses Permitted to Maintain In-person Operations*, p. 5 (April 15, 2020); Ex. 2, Pennsylvania Dept. of Health, *Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings* (Jul. 1, 2020); Ex. 3, Office of the Governor, Press Release, *Gov. Wolf Reminds Pennsylvanians: 'Masks are Mandatory'* (Jul. 3, 2020) ("Masks are mandatory when leaving the home[.]"); Ex. 4, Pennsylvania Dept. of Health, *Updated Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings: Frequently Asked Questions* (Nov. 17, 2020); Administrative Order, *In Re: Administrative Order Concerning The Use Of Face Masks/Coverings In Public Areas of The District's Courthouses*, Misc. No. 2:20-mc-593-MRH (updated Dec. 7, 2020); Ex. 5, Centers for Disease Control and Prevention, *Requirement for Persons to Wear Masks While On Conveyances and Transportation Hubs* (Jan. 29, 2021).

[2] *See*, *e.g.*, Ex. 6, Centers for Disease Control and Prevention, *Your Guide to Masks* (updated Feb. 22, 2021), also available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last accessed Mar. 30, 2021) ("CDC recommends that people wear masks in public settings, at events and gatherings, and anywhere they will be around other people.").

30.    Second, and regardless of any guidance or orders, at and after the onset of the coronavirus pandemic, wearing protective face masks has become routine[3] and is done only for medical purposes.

31.    For these reasons, Defendants knew or should have known that the sale of protective face masks was not subject to sales tax because such masks became and now are properly characterized as everyday wear and medical supplies.

32.    Guidance from the Department of Revenue bears this out.

33.    On April 23, 2020, after the Governor's March 6, 2020 declaration[4] that the pandemic constituted a natural disaster, the Department indicated on its website that "protective face masks" would be "exempt from Pennsylvania sales tax."[5]

34.    Then, on January 20, 2021, the Department issued a Bulletin first explaining that, *pre-pandemic*, face masks were taxable:

> Medical supplies, including medical and disposable surgical masks, are exempt from Pennsylvania sales tax. 72 P.S. § 7204(17); <u>Retailer's Information Guide</u> (REV-717). Prior to COVID-19, non-medical masks and face coverings were subject to sales tax because non-medical masks and face coverings were generally classified as ornamental wear or clothing accessories and the use for which consumers purchased non-medical masks and face coverings was not for an exempt purpose. 72 P.S. § 7204(26); <u>Retailer's Information Guide</u> (REV-717). Retailers were not obligated to determine whether a non-medical mask or face covering would be used for medical purposes because "[t]he determination that purchases qualify for exemptions as . . . medical supplies and the

---

[3] The Centers for Disease Control and Prevention provides instructions on how to wash reusable face masks, like some Plaintiffs bought, instructing individuals to "[i]nclude your mask with your regular laundry." Ex. 7, Centers for Disease Control and Prevention, *How to Store and Wash Masks* (updated Oct. 28, 2020).

[4] Ex. 8, Governor Tom Wolf, *Proclamation of Disaster Emergency* (Mar. 6, 2020 and extended on June 3, 2020, Aug. 31, 2020, Nov. 24, 2020, and Feb. 19, 2021).

[5] Ex. 9, Pennsylvania Dept. of Revenue, *Masks and Ventilators* (Apr. 23, 2020).

like, is based essentially upon the use for which the purchase[s] are intended." 61 Pa. Code § 52.1(a).[6]

35.    The Department went on to explain that, *post-pandemic*, face masks were non-taxable:

> On March 6, 2020, pursuant to the provisions of Subsection 7301(c) of the Emergency Management Code, 35 Pa.C.S. § 7101, *et seq.*, Governor Tom Wolf issued a Proclamation of Disaster Emergency in response to the COVID-19 pandemic, authorizing "all Commonwealth departments and agencies [to] utilize all available resources . . . as deemed necessary to cope with this emergency situation." In response to consumer demand for medical masks outpacing supply and leading customers to use non-medical masks and face coverings for medical purposes, namely to prevent and control the spread of COVID-19, the department responded with a statement that any non-medical cloth or disposable mask purchased for use as a means of protection against the virus was not subject to sales or use tax.

*Id.*

36.    The Department then indicated that customers could obtain refunds for, and businesses would not be required to remit, sales tax on protective face masks:

> Accordingly, the department will not assess retailers for failing to collect sales tax on purchases of non-medical masks and face coverings. Additionally, consumers who can certify to the department that a cloth or disposable non-medical mask or face covering was purchased and used as a means of protection against the virus can petition the department for a refund of any sales tax paid.

*Id.*

37.    The Department also indicated it had recently recognized protective face masks were exempt from Pennsylvania sales tax as everyday clothing as well:

> As of October 30, 2020, in response to the ubiquitous use of non-medical masks and face coverings, the department recognizes that

---

[6] Ex. 10, Pennsylvania Dept. of Revenue, *Sales and Tax Bulletin 2021-01* (Jan. 20, 2021).

both cloth and disposable non-medical masks and face coverings are
exempt from sales and use tax as everyday wear or clothing.

*Id.*

38.     In short, the face masks at issue were designed and intended for medical purposes and for use as everyday wear, meaning Defendants knew or should have known the masks were non-taxable.

39.     But even if the face masks at issue were not so designed, Defendants knew or should have known the masks were non-taxable at and after the onset of the coronavirus pandemic because such masks became medical supplies and everyday wear following the pandemic.

40.     Yet Defendants charged sales tax on non-taxable face masks and required payment of sales tax to obtain non-taxable face masks.

41.     Plaintiffs paid such sales tax in response to and as a result of Defendants' conduct.

42.     Had Defendant not charged sales tax on the face masks Plaintiffs purchased, Plaintiffs would not have paid such tax.

43.     And had Defendants not required payment of sales tax on the face masks Plaintiffs purchased, Plaintiffs could have bought the face masks without paying the sales tax Defendants required Plaintiffs to pay.

44.     By charging sales tax on non-taxable face masks, and by requiring payment of such tax to obtain non-taxable face masks, Plaintiffs lost money and the retention and use of their money as a result of Defendants' wrongful conduct.

45.     This action is brought against those retailers that charged or continue to charge sales tax on protective face masks sold in, or into via the internet, Pennsylvania.

**Big Lots, Inc.**

46.     Big Lots sells protective face masks.

47.     Wojton bought a protective face mask from Big Lots at a retail store located at 1155 Washington Pike, Bridgeville, PA 15017, on June 28, 2020.

48.     Big Lots advertised the mask Wojton purchased as costing $2.04.

49.     Yet Big Lots charged, and Wojton paid, at least $2.18 for the mask.

50.     The extra $0.14 equals 7% of the mask's advertised price.

51.     Wojton did not discover the extra $0.14 charge until reviewing her receipt.[7]

52.     The receipt identified the extra $0.14 charge as sales tax.

53.     Big Lots operates, controls, maintains, and is otherwise responsible for the POS systems in its brick-and-mortar locations and online stores.

54.     Big Lots' POS systems regularly charge and collect sales tax on protective face masks sold at Big Lots' brick-and-mortar locations in Pennsylvania and online to persons in Pennsylvania.

55.     By charging and collecting sales tax on protective face masks, Big Lots denied Wojton and the Class the money and the benefit of the use and retention of money they otherwise would have had, benefited from, or held.

56.     Wojton and the class suffered harm as a result of Big Lots' conduct.

**Dollar General Corporation**

57.     Dollar General sells protective face masks.

58.     Evans bought protective face masks from Dollar General at a retail store located at 4665 Tuscarawas Rd., Beaver, PA 15009, on July 11, 2020.

---

[7] Ex. 11, Big Lots Receipt.

59.     Dollar General advertised the masks Evans purchased as costing $2.00 each, or a total of $4.00.

60.     Yet Dollar General charged, and Evans paid, $4.24 for the masks.

61.     The extra $0.24 equals 6% of the masks' advertised price.

62.     Evans did not discover the extra $0.24 charge until reviewing her receipt.[8]

63.     The receipt identified the extra $0.24 charge as sales tax.

64.     Dollar General operates, controls, maintains, and is otherwise responsible for the POS systems in its brick-and-mortar locations and online stores.

65.     Dollar General's POS systems regularly charge and collect sales tax on protective face masks sold at Dollar General's brick-and-mortar locations in Pennsylvania and online to persons in Pennsylvania.

66.     By charging and collecting sales tax on protective face masks, Dollar General denied Evans and the Class the money and the benefit of the use and retention of money they otherwise would have had, benefited from, or held.

67.     Evans and the class suffered harm as a result of Dollar General's conduct.

**Jo-Ann Stores, LLC**

68.     JOANN sells protective face masks.

69.     Pollock bought a protective face mask from JOANN at a retail store located at 6945 US 322, Cranberry, PA 16319.

70.     JOANN advertised the masks Pollock purchased as costing $3.99.

71.     Yet JOANN charged, and Pollock paid, more than $3.99 for the masks.

72.     The extra amount equals 6% of the masks' advertised price.

---

[8] Ex. 12, Dollar General Receipt.

73.     Pollock did not discover the extra charge until reviewing her receipt.[9]

74.     The receipt identified the extra charge as sales tax.

75.     JOANN operates, controls, maintains, and is otherwise responsible for the POS systems in its brick-and-mortar locations and online stores.

76.     JOANN's POS systems regularly charge and collect sales tax on protective face masks sold at JOANN's brick-and-mortar locations in Pennsylvania and online to persons in Pennsylvania.

77.     By charging and collecting sales tax on protective face masks, JOANN denied Pollock and the Class the money and the benefit of the use and retention of money they otherwise would have had, benefited from, or held.

78.     Pollock and the class suffered harm as a result of JOANN's conduct.

**The Home Depot, Inc.**

79.     Home Depot sells protective face masks.

80.     Marous bought two protective face masks from Home Depot at a retail store located at 112 Ben Avon Heights Road, Pittsburgh, PA 15237, on November 18, 2020.

81.     Home Depot advertised the masks Marous purchased as costing $14.97.

82.     Yet Home Depot charged, and Marous paid, $16.01 for the masks.

83.     The extra $1.04 equals 7% of the masks' advertised price.

84.     Marous did not discover the extra $1.04 charge until reviewing her receipt.[10]

85.     The receipt identified the extra $1.04 charge as sales tax.

---

[9] Ex. 13, JOANN Receipt.
[10] Ex. 14, Home Depot Receipt.

86.     Home Depot operates, controls, maintains, and is otherwise responsible for the POS systems in its brick-and-mortar locations and online stores.

87.     Home Depot's POS systems regularly charge and collect sales tax on protective face masks sold at Home Depot's brick-and-mortar locations in Pennsylvania and online to persons in Pennsylvania.

88.     By charging and collecting sales tax on protective face masks, Home Depot denied Marous and the Class the money and the benefit of the use and retention of money they otherwise would have had, benefited from, or held.

89.     Marous and the class suffered harm as a result of Home Depot's conduct.

### Walmart Inc.

90.     Walmart sells protective face masks.

91.     McLean bought protective face masks from Walmart at a retail store located at 250 Summit Park Dr., Pittsburgh, PA 15275 on September 11, 2020 and on September 28, 2020.

92.     Walmart advertised the mask that McLean purchased on September 11, 2020 as costing $5.97.

93.     Yet Walmart charged, and McLean paid, at least $6.38 for the mask that McLean purchased on September 11, 2020.

94.     The extra $0.41 equals 7% of the advertised price for the mask that McLean purchased on September 11, 2020.

95.     McLean did not discover the extra $0.41 she paid on September 11, 2020 until reviewing her receipt.[11]

---

[11] Ex. 15, Walmart Receipts.

96.     The September 11, 2020 receipt identified the extra $0.41 charge as sales tax for the mask that McLean purchased.

97.     Walmart advertised a 5-pack of masks that McLean purchased on September 28, 2020 as costing $9.97.

98.     Yet Walmart charged, and McLean paid, at least $10.66 for the 5-pack she purchased on September 28, 2020.

99.     The extra $0.69 equals 7% of the advertised price for the 5-pack McLean purchased on September 28, 2020.

100.     McLean did not discover the extra $0.69 she paid on September 28, 2020 until reviewing her receipt after her purchase.[12]

101.     The receipt indicated the extra $0.69 charge as sales tax for the 5-pack McLean purchased on September 28, 2020.

102.     Walmart operates, controls, maintains, and is otherwise responsible for the POS systems in its brick-and-mortar locations and online stores.

103.     Walmart's POS systems regularly charge and collect sales tax on protective face masks sold at Walmart's brick-and-mortar locations in Pennsylvania and online to persons in Pennsylvania.

104.     By charging and collecting sales tax on protective face masks, Walmart denied McLean and the Class the money and the benefit of the use and retention of money they otherwise would have had, benefited from, or held.

105.     McLean and the class suffered harm as a result of Walmart's conduct.

---

[12] *Id.*

## CLASS ACTION ALLEGATIONS

106.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated.

107.    Plaintiffs seek to certify the following Classes:

(a)    The Big Lots Class: "All persons who purchased a protective face mask or face covering from Big Lots at a retail store in Pennsylvania, or from Big Lots over the internet and arranged for delivery of the protective face mask into Pennsylvania, and who were charged an amount purporting to represent sales tax on that purchase since March 6, 2020."

(b)    The Dollar General Class: "All persons who purchased a protective face mask or face covering from Dollar General at a retail store in Pennsylvania, or from Dollar General over the internet and arranged for delivery of the protective face mask into Pennsylvania, and who were charged an amount purporting to represent sales tax on that purchase since March 6, 2020."

(c)    The JOANN Class: "All persons who purchased a protective face mask or face covering from JOANN at a retail store in Pennsylvania, or from JOANN over the internet and arranged for delivery of the protective face mask into Pennsylvania, and who were charged an amount purporting to represent sales tax on that purchase since March 6, 2020."

(d)    The Home Depot Class: "All persons who purchased a protective face mask or face covering from Home Depot at a retail store in Pennsylvania, or from Home Depot over the internet and arranged for delivery of the protective face mask into Pennsylvania, and who were charged an amount purporting to represent sales tax on that purchase since March 6, 2020."

(e)    The Walmart Class: "All persons who purchased a protective face mask or face covering from Walmart at a retail store in Pennsylvania, or from Walmart over the internet and arranged for delivery of the protective face mask into Pennsylvania, and who were charged an amount purporting to represent sales tax on that purchase since March 6, 2020."

108.    Plaintiffs reserve the right to expand, narrow, or otherwise modify the Classes as the litigation continues and discovery proceeds.

109.    Excluded from the Classes are Defendant's officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

110.    **Numerosity**. Each Class is so numerous that joinder of its Class Members is impracticable. Big Lots, Dollar General, and JOANN represent having each charged sales tax on at least 50,000 transactions of face masks in Pennsylvania. (Doc. 45 at 21-22) So too has Walmart. (Doc. 1 at 7) Home Depot represents having charged sales tax on at least 66,827 transactions of face masks in Pennsylvania. (Doc. 45 at 21)

111.    **Commonality**. Plaintiffs and each Member of each Class share numerous common questions of law and fact that will drive the resolution of the litigation. For example, there is a single common answer to the question of whether Defendants violated the UTPCPL by charging Class Members 6% or more than the advertised price for protective face masks. The answer to this question is the same for Plaintiffs and each Member of each Class, and Plaintiffs and each Member of each Class require the same proof to answer this question. This question, and other common questions of law and fact, predominate over any individual issues.

16

112.    **Typicality**. Plaintiffs' claims are typical of those of other Class members because the claims are based on the same legal theories and arise from the same conduct.

113.    **Adequacy of Representation**. Plaintiffs are adequate representatives of each Member of each Class because the interests of Plaintiffs and each Member of each Class align. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of each Member of each Class and have no interest antagonistic to any Member of any Class. Plaintiffs retained counsel who are competent and experienced in the prosecution of class action litigation generally and UTPCPL litigation specifically.

114.    **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiffs and each Member of each Class, in that Defendants charge each Member of each Class 7% or more than the advertised price for protective face masks.  The common issues arising from Defendants' conduct affecting Class members, as described above, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

115.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer

management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

## COUNT 1—Big Lots Inc.
### Violation of the Unfair Trade Practices and Consumer Protection Law
### 73 Pa. Stat. § 201-1, et seq.

116.    Wojton brings this claim individually and on behalf of the Big Lots Class.

117.    Wojton and Big Lots are persons, the protective face masks are goods purchased for personal, family, and/or household use, and Big Lots' conduct described herein is trade or commerce under the UTPCPL. 73 Pa. Stat. § 201-2(2)-(3), 201-9.2.

118.    Big Lots' conduct described herein constitutes as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because: i) Big Lots represented that goods have characteristics they do not have; ii) Big Lots advertised goods with intent not sell them as advertised; and iii) Big Lots engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (ix), (xxi).

119.    Big Lots' use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

120.    Wojton and the Big Lots Class Members lost money or property, and the right to use that money and property, as result of Big Lots' violations and therefore are entitled to one hundred dollars ($100) per violation under 73 P.S. 201-9.2, as well as reasonable costs and attorney fees and such additional relief the Court deems necessary and proper.

## COUNT 2—Dollar General Corporation
### Violation of the Unfair Trade Practices and Consumer Protection Law
### 73 Pa. Stat. § 201-1, et seq.

121.    Evans brings this claim individually and on behalf of the Dollar General Class.

122.    Evans and Dollar General are persons, the protective face masks are goods purchased for personal, family, and/or household use, and Dollar General's conduct described herein is trade or commerce under the UTPCPL. 73 Pa. Stat. § 201-2(2)-(3), 201-9.2.

123.    Dollar General's conduct described herein constitutes as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because: i) Dollar General represented that goods have characteristics they do not have; ii) Dollar General advertised goods with intent not sell them as advertised; and iii) Dollar General engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (ix), (xxi).

124.    Dollar General's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

125.    Evans and the Dollar General's Class Members lost money or property as result of Dollar General's violations and therefore are entitled to one hundred dollars ($100) per violation under 73 P.S. 201-9.2, as well as reasonable costs and attorney fees and such additional relief the Court deems necessary and proper.

### COUNT 3—Jo-Ann Stores, LLC
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73 Pa. Stat. § 201-1,** *et seq.*

126.    Pollock brings this claim individually and on behalf of the JOANN Class.

127.    Pollock and JOANN are persons, the protective face masks are goods purchased for personal, family, and/or household use, and JOANN's conduct described herein is trade or commerce under the UTPCPL. 73 Pa. Stat. § 201-2(2)-(3), 201-9.2.

128.    JOANN's conduct described herein constitutes as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because: i) JOANN represented that

19

goods have characteristics they do not have; ii) JOANN advertised goods with intent not sell

them as advertised; and iii) JOANN engaged in fraudulent or deceptive conduct which created a

likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (ix), (xxi).

129.    JOANN's use of unfair methods of competition and unfair or deceptive acts or

practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

130.    Pollock and the JOANN Class Members lost money or property as result of

JOANN's violations and therefore are entitled to one hundred dollars ($100) per violation under

73 P.S. 201-9.2, as well as reasonable costs and attorney fees and such additional relief the Court

deems necessary and proper.

### COUNT 4—The Home Depot, Inc.
### Violation of the Unfair Trade Practices and Consumer Protection Law
### 73 Pa. Stat. § 201-1, et seq.

131.    Marous brings this claim individually and on behalf of the Home Depot Class.

132.    Marous and Home Depot are persons, the protective face masks are goods

purchased for personal, family, and/or household use, and Home Depot's conduct described

herein is trade or commerce under the UTPCPL. 73 Pa. Stat. § 201-2(2)-(3), 201-9.2.

133.    Home Depot's conduct described herein constitutes as unfair methods of

competition and unfair or deceptive acts or practices under the UTPCPL because: i) Home Depot

represented that goods have characteristics they do not have; ii) Home Depot advertised goods

with intent not sell them as advertised; and iii) Home Depot engaged in fraudulent or deceptive

conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (ix),

(xxi).

134.    Home Depot's use of unfair methods of competition and unfair or deceptive acts

or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

135.     Marous and the Home Depot Class Members lost money or property as result of Home Depot's violations and therefore are entitled to one hundred dollars ($100) per violation under 73 P.S. 201-9.2, as well as reasonable costs and attorney fees and such additional relief the Court deems necessary and proper.

**COUNT 5—Walmart Inc.**
**Violation of the Unfair Trade Practices and Consumer Protection Law**
**73  Pa. Stat. § 201-1, et seq.**

136.     McLean brings this claim individually and on behalf of the Walmart Class.

137.     McLean and Walmart are persons, the protective face masks are goods purchased for personal, family, and/or household use, and Walmart's conduct described herein is trade or commerce under the UTPCPL. 73 Pa. Stat. § 201-2(2)-(3), 201-9.2.

138.     Walmart's conduct described herein constitutes as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because: i) Walmart represented that goods have characteristics they do not have; ii) Walmart advertised goods with intent not sell them as advertised; and iii) Walmart engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (ix), (xxi).

139.     Walmart's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3.

140.     McLean and the Walmart Class Members lost money or property as result of Walmart's violations and therefore are entitled to one hundred dollars ($100) per violation under 73 P.S. 201-9.2, as well as reasonable costs and attorney fees and such additional relief the Court deems necessary and proper.

**JURY TRIAL DEMANDED**

Plaintiffs request a jury trial on all claims so triable.

21

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a.    An order certifying each proposed Class, appointing Plaintiffs as representative of each proposed Class they seek to represent, and appointing undersigned counsel as counsel for each proposed Class;

b.    An order awarding one hundred dollars ($100.00) per violation of the UTPCPL, and not a refund of the overcharges that Defendants misrepresented as sales tax;

c.    An order declaring protective face masks nontaxable;

d.    An order awarding attorneys' fees and costs; and

e.    An order awarding all other relief that is just, equitable and appropriate.

Respectfully Submitted,

Dated: March 31, 2021                  */s/ Kevin W. Tucker*

Kevin W. Tucker (He/Him/His)
Pa. No. 312144
Kevin J. Abramowicz
Pa. No. 320659
EAST END TRIAL GROUP LLC
6901 Lynn Way, Ste. 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com

Jason M. Leviton (*pro hac* forthcoming)
Lauren Godless (*pro hac* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel. (617) 398-5600
jason@blockleviton.com

lauren@blockleviton.com

*Counsel for Plaintiff*