IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| GERRY MCLEAN, MARY MAROUS, JOYCE WOJTON, BEVERLY EVANS, JENNIFER POLLOCK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>    Plaintiffs,<br><br>    vs.<br><br>BIG LOTS INC., DOLLAR GENERAL CORPORATION, JO-ANN STORES, LLC, THE HOME DEPOT, INC., WALMART INC.,<br><br>    Defendants, | 2:20-CV-02000-MJH |

OPINION

Plaintiffs, Gerry McLean, May Marous, Joyce Wojton, Beverly Evans, and Jennifer Pollock, individually and on behalf of all others similarly situated, bring claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1 et *seq*. against Defendants, Big Lots, Inc., Dollar General Corporation, Jo-Ann Stores, LLC, The Home Depot, Inc., and Wal-Mart, Inc., alleging that Defendants charged sales tax on otherwise exempt protective face masks. (ECF No. 67). Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 72-73). The matter is now ripe for consideration.

Upon consideration of Plaintiff's Amended Complaint (ECF No. 67), Defendants' Motion to Dismiss (ECF No. 72), the respective briefs of the parties (ECF Nos. 76-77), the arguments of counsel, and for the following reasons, Defendants' Motion to Dismiss will be granted.

    I.    Background

As Plaintiffs note in their Amended Complaint, the facts in this matter are simple and straightforward. (ECF No. 67 at ¶ 2). Plaintiffs, aver in this putative class action, that Defendant retailers knowingly, negligently, or deceptively falsely advertised the price of protective face masks, represented that protective face masks were subject to Pennsylvania sales tax, and collected from Plaintiffs amounts equal to and purporting to be Pennsylvania sales tax, when they were not subject to Pennsylvania sales tax, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1 et seq. *Id*. at ¶ 1.

Plaintiffs aver that the sales of goods in Pennsylvania generally are subject to Pennsylvania sales tax but with some statutory exemptions. *Id*. at ¶ 17; *see* 72 P.S. §§ 7202, 7204. Two exemptions include "medical supplies" and "clothing." *Id*. at ¶ 18; see 72 P.S. § 7204(17), (26). "Medical supplies" include "tangible personal property for use in alleviation or treatment of injury, illness, disease or incapacity." *Id*. at ¶ 19; 61 Pa. Code. § 52.1(b)(2). "Clothing" includes "[a]rticles, including vesture, wearing apparel, raiments, garments or shoes, which are designed to cover the human body as ordinary or everyday wear," but excludes "accessories" and "ornamental wear," which are "[a]rticles, other than clothing" "designed to be worn on or about the human body" and "designed and normally worn for decorative purposes," respectively. *Id*. at ¶ 21; 61 Pa. Code. § 53.1. Prior to the COVID-19 pandemic, Plaintiffs aver that non-surgical masks were designed or normally worn as accessories or ornamental wear and that those masks were taxable because they were not designed or intended for medical purposes or for use as everyday wear. *Id*. at ¶¶ 22-23. However, at the onset of the pandemic, the designation of non-surgical masks shifted to medical purposes and everyday wear as Pennsylvania residents were encouraged and then ordered to wear masks to mitigate the spread of coronavirus. *Id*. at ¶¶ 24-28.

On April 23, 2020, the Pennsylvania Department of Revenue indicated on its website that protective face masks that are sold at retail during the March 6, 2020 emergency disaster declaration are exempt from sales tax. *Id*. at ¶ 33; see also ECF No. 67-9. On January 20, 2021, the Department issued a Sales and Use Tax Bulletin with an effective date of October 30, 2020, explaining that face masks were taxable pre-pandemic, but non-taxable post-pandemic. *Id*. at ¶¶ 34-35. The Bulletin also advised customers that they could petition the Department for a refund of any sales tax paid on face masks. *Id*. at ¶ 36.

Each of the named Plaintiffs allege that they and the putative class members bought masks from each of the Defendants, who collected sales tax on the same during a period after April 23, 2020. *Id*. at ¶¶ 46-105. Plaintiffs aver that, under the UTPCPL, protective face masks are goods purchased for personal, family, and/or household use, and Defendants' conduct, as described, is trade or commerce. *Id*. at ¶¶ 117, 122, 127, 132 and 137. Further, they allege Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because: i) they represented that goods have characteristics they do not have; ii) they advertised goods with intent not sell them as advertised; and iii) they engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. *Id*. at ¶¶ 118, 123, 128, 133 and 138. Plaintiffs also aver that Defendants' use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce violates 73 P.S. § 201-3, and that Defendants' violations resulted in Plaintiffs' lost money or property as result of Defendants' violations. *Id*. at ¶¶ 119-20, 124-25, 129-30, 134-35, and 139-40.

In their Motion to Dismiss, Defendants argue that 1) Plaintiffs cannot state claims under the UTPCPL because a.) Collecting Sales Tax Is Not "Trade or Commerce"; b.) Plaintiffs have

3

not alleged any facts to show that Defendants engaged in fraudulent, unfair, or deceptive conduct; c.) Plaintiffs have not alleged justifiable reliance on Defendants' Representations; and d.) Plaintiffs have not suffered an ascertainable loss.  Further, Defendants contend that Plaintiffs' claims are barred by the voluntary payment doctrine.  (ECF No. 73).

II.     Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa.

4

June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.  Discussion

    A. UTPCL Claim

        1. Scope of UTPCL

Defendants argue that collecting sales tax is not "Trade or Commerce," and thus, the UTPCL does not apply.  Plaintiffs contend that collecting sales tax on protective face masks was in the course of Defendants' conduct of "advertising, offering for sale, sale, or distribution" of goods and services.  Defendants respond that Plaintiffs have not alleged anything about the sale of the non-medical protective face masks that was unfair or deceptive, only that such sale relates to the collection of sales tax, which is neither trade nor commerce.

The UTPCPL applies to "unfair or deceptive acts or practices *in the conduct of any trade or commerce*." 73 P.S. § 201-3(a) (emphasis added).  Under the UTPCPL, both "trade" and "commerce" are defined as

> the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

*Id*. § 201–2(3).  While Pennsylvania appellate courts have, on occasion, discussed this definition, they have not yet done so in the context of collection or mis-collection of sales tax. "When interpreting state law, [federal courts] follow a state's highest court; if that state's highest court has not provided guidance, [federal courts] are charged with predicting how that court would resolve the issue.... tak[ing] into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016).

Because this Court does not have guidance directly on point, it will examine persuasive reasoning from the Commonwealth Court, an intermediate court in Pennsylvania, and from other jurisdictions who have evaluated  mis-collection of sales tax. In his concurring opinion in

6

*Meyer v. Cmty. Coll. of Beaver Cty.*, 93 A.3d 806, 816 (Pa. 2014), then-Chief Justice Castille expressed agreement with Commonwealth Court Judge Pellegrini's assessment of "trade or commerce" under the UTPCPL as,

> [a] mercantile activity in which the person engaged in that business is doing so for private profit which could motivate unfair or deceptive practices for private gain or, more accurately, private greed.

*Meyer v. Cmty. Coll. of Beaver Cty.*, 625 Pa. 563, 579, 93 A.3d 806, 816 (2014) (quoting *Meyer v. Community College of Beaver County*, 30 A.3d 587, 601–02 (Pa.Cmwlth.2011) (Pellegrini, J., dissenting). In addition to providing a refined evaluation of "trade or commerce" in *Meyer*, Chief Justice Castille also agreed with Judge Pellegrini's reasoning that when a government entity, like a community college, "carries out a public duty, it is not engaged in the conduct of a trade or commerce, but in the conduct of government." *Id*. While a Pennsylvania Supreme Court's concurrence quoting an intermediate court's dissent does not provide this Court with mandatory guidance, the reasoning is instructive to this context.

Likewise, courts in Massachusetts and Connecticut have addressed the collection of sales tax under their respective consumer protection statutes. In *Feeney v. Dell Inc.*, 454 Mass. 192, 908 N.E.2d 753 (2009), the Massachusetts Supreme Judicial Court assessed whether, under a statute nearly identical to the UTPCPL[1], the mis-collection of sales tax constituted "unfair and

---

[1] Under its General Laws, the Massachusetts statute governing the Regulation of Business Practices for Consumer protection provides as follows:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Mass. Gen. Laws Ann. ch. 93A, § 2 (West). It further provides:

> (b) "Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in

deceptive practices in the conduct of any trade or commerce." *Id*. at 770.  The *Feeney* Court noted that "where a party's actions are motivated by 'legislative mandate, not business or personal reasons,' this court has 'repeatedly held that c. 93A does not apply.'" *Id*.  In particular, the court noted that while defendant's sale was in a "business context," the issue there was "more textured" because "the plaintiffs' claim was not based upon the transaction as a whole, but on a particular component of the transactions, the allegedly improper collection of sales tax." *Id*. Thus, *Feeney* concluded that, as Dell remitted the proceeds from the tax collected to the Commonwealth instead of retaining them for its own enrichment, its collection of tax was not motivated by "business or personal reasons" but was pursuant to legislative mandate.  *Id*. at 771.  Accordingly, *Feeney* concluded that plaintiffs had not plead a claim under the Massachusetts consumer protection statute.

The Superior Court of Connecticut held similarly in *Blass v. Rite Aid of Connecticut, Inc.*, 51 Conn.Supp. 622, 16 A.3d 855 (Conn. Super. Ct. 2009) under its analysis of "trade of commerce" under the Connecticut Unfair Trade Practices Act (CUTPA).  In particular, it held:

> The miscollection of taxes, whether negligent or intentional, does not constitute an unfair or deceptive act or practice in the conduct of any trade or commerce under the language of CUTPA or the FTCA. A retailer gains no personal benefit from the overcollection of taxes. In fact, such activity only increases the retailer's prices, working against its economic interest. When a retailer overcharges sales tax, the customer's overall purchase price increases. Customers charged more per transaction are more likely to reduce purchases made from the retailer or, more harmful still, to shop at competing stores. Likewise, the defendant's action in this case was not commercial because when it collected the plaintiff's money for taxes, it did so as an agent of the State. There is no allegation that the defendant kept any of the miscollected taxes for itself.

---

subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

Mass. Gen. Laws Ann. ch. 93A, § 1 (West)

*Id*. at 863.

Here, the guidance from the appellate courts of Pennsylvania, Massachusetts, and Connecticut is persuasive. In viewing the collection of sales tax through the lens of a mercantile activity for private profit, Plaintiffs' UTPCL claim fails. The collection of sales tax is divorced from private profit. Retailers, like the Defendants here, collect sales tax on behalf of the Commonwealth's Department of Revenue because state law requires them to do so. *See* 72 P.S. § 7237(b)(1). Once collected, retailers hold the tax in trust before remitting to the Commonwealth. *See* 72 P.S. §§ 7225 and 7217(a)(2)–(4). A retailer's conduct in collecting taxes is not for purposes of profit, private gain, or greed. The retailer realizes no increase in revenue or profit in a transaction that charges a sales tax.[2] Indeed, a retailer has little incentive to engage in "deceptive" or "unfair" practices by charging more than it must at the expense of its competitors charging a better price. Therefore, under the principles described by the cases above, the collecting of sales tax would appear to not fit the definition of "trade or commerce" under the UTPCPL. Thus, without conduct that falls within trade or commerce, Plaintiffs' Amended Complaint cannot support a claim under the UTPCPL.

Accordingly, on this basis, Defendants' Motion to Dismiss will be granted.

2. Allegations of Fraudulent, Unfair, or Deceptive Conduct

Even if the Court held that the UPTPCL applied, Defendants contend that Plaintiffs have not alleged any facts to show that Defendants engaged in fraudulent, unfair, or deceptive

---

[2] In exchange for the monthly remittance of sales tax to the Commonwealth, retailers receive only a nominal credit of $25 per month. *See* 72 P.S. § 7227(2)(i). Further, a failure to remit sales tax to the Department would subject retailers to potential suspension or revocation of their business licenses. *See* 72 P.S. § 7208. Accordingly, common sense dictates that the collection and remittances of sales tax has little to do with profit and revenue, and instead, basic compliance with the law.

conduct. Plaintiffs argue that they have alleged that Defendants engaged in fraudulent, unfair, or deceptive conduct because Defendants knowingly, negligently, or deceptively represented that face masks were subject to sales tax and collected from Plaintiffs the equivalent of what would have been, and which Defendants falsely represented to be, sales tax. (ECF No. 67 ¶¶ 48-54, 59-65, 70-76, 81-87, 92-103). Plaintiffs allege this conduct constituted misrepresentation and was false and deceptive violating subsections of the UTPCPL prohibiting retailers from, among other things: (1) "Representing that goods or services have . . . characteristics . . . that they do not have"; (2) "Advertising goods with intent not to sell them as advertised"; and/or (3) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id*. at ¶¶ 118, 123, 128, 133, 138. In particular, Plaintiffs argue that Defendants' "representation" that non-medical protective face masks were taxable was false and therefore actionable under the UTPCPL. Defendants respond that they identified the prices of the non-medical protective face masks and the amounts collected as sales tax on Plaintiffs' receipts. *Id*. at ¶¶ 48, 52, 59, 63, 70, 74, 81, 85, 92, 96, 97, 101; ECF Nos. 67-11 to 67-15. Further, Defendants contend that under existing law, non-medical protective face masks were taxable, and even if they were not, Defendants' collection of sales was at most a representation of their understanding of Pennsylvania law and therefore cannot be considered a deceptive act.

Plaintiffs allege that Defendants violated three subsections of the UTPCPL: 201-2(4)(v), (ix), and (xxi). Subsections (v) and (ix) "apply only to claims of false advertising" and require the plaintiff to show that "(1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (internal quotation marks and citations omitted); *see also Corsale v. Sperian Energy Corp.*, 412 F. Supp.

10

3d 556, 562 (W.D. Pa. 2019) (setting forth the elements under Subsection (ix)). Similarly, under Subsection (xxi), the catch-all provision, a plaintiff must show that the defendant committed "a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances." 73 P.S. § 202-2(4)(xxi).

Here, allegations of fraudulent, unfair, or deceptive conduct are lacking. Plaintiffs have alleged that Defendants advertised the sales price of non-medical protective face masks and identified that price and the amount of sales tax on their receipts. Thus, Defendants disclosed the actual pre-tax price of non-medical protective face masks and the actual amount of sales tax collected in connection with each transaction. Under these allegations, Defendants' conduct cannot be considered deceptive.

Further, at the time of the alleged purchases, no statutory or regulatory change had occurred to alter that taxability of non-medical protective masks. At most, Defendants had notice of informal guidance in the form of Department of Revenue Q&A responses (April and October 2020) and a Bulletin (January 2021). Under the regulations, Department of Revenue bulletins are "for informational purposes only and should not be relied upon." 61 Pa. Code § 3.4. Under its most recent guidance, the Department has acknowledged that, based on existing law, it was not the duty of retailers "to determine whether a non-medical mask or face covering would be used for medical purposes." Pa. Dep't of Rev., Sales and Use Tax Bulletin 2021-01 (Jan. 20, 2021), FAC, Ex. 10 (citing 61 Pa. Code. § 52.1(a)). As a result, only "consumers who can certify to the department that a cloth or disposable non-medical mask or face covering was purchased or used as a means of protection against the virus" are eligible for refunds under the established statutory refund procedures through a case-by-case determination. *See id*. Under the law as it existed at the time of the transactions, along with the subsequent guidance, Defendants, were, at

worst, representing their understanding of Pennsylvania law, and there could be no deception on this basis. Indeed, any onus to challenge previously collected sales tax, appears to have fallen to the consumer.

Accordingly, Defendants' Motion to Dismiss, on the basis they did not engage in fraudulent, unfair, or deceptive conduct will be granted.

### 3. Justifiable Reliance

Defendants also contend that Plaintiffs' UTPCPL claim fails because they have not alleged that they justifiably relied on any false representations from Defendants when purchasing the non-medical protective face masks or paying sales tax. Plaintiffs argue that they have alleged facts sufficient to demonstrate justifiable reliance. Defendants respond that even if the non-medical protective face masks at issue clearly were nontaxable (which Defendants dispute and the Department guidance does not support), Plaintiffs' purported reliance on Defendants' understanding of the tax law would not be justifiable.

The enforcement provision of the UTPCPL "creates a causation element, which requires a private plaintiff to demonstrate justifiable reliance." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (citing *Schwartz v. Rockey*, 932 A.2d 885, 897 n. 16 (Pa. 2007)). This Court has explained the "justifiable reliance" requirement as follows:

> To state a claim under the deceptive prong [of the UTPCPL] a plaintiff must allege that he justifiably relied on the defendant's wrongful conduct or representation, and that he suffered harm as a result of that reliance. As an initial matter, a plaintiff does not have to establish actual deception by the defendant's wrongful conduct. Rather, the plaintiff only needs to show that the wrongful conduct was capable of being interpreted in a misleading way. It follows, then, that justifiable reliance can be broader than a showing that the plaintiff acted, or failed to act, because he was misled by the defendant's wrongful conduct. So long as the plaintiff acted, or failed to act, in response to and as a result of the defendant's wrongful conduct, he has established justifiable reliance under the deceptive prong of the UTPCPL's catchall provision.

*Mellish v. CACH, LLC*, No. 19-1217, 2020 U.S. Dist. LEXIS 52383, at *16-17 (W.D. Pa. Mar. 26, 2020). Plaintiffs are charged with knowledge of the law. *See Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law."); *Anela v. Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986) (same). As this Court has also explained, "[i]f a man knows the truth about a representation, he is neither deceived nor defrauded, and any loss he may sustain is in effect self-inflicted." *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 566 (W.D. Pa. 2019).

Here, to establish that Plaintiffs "acted, or failed to act, in response to and as a result of the defendant's wrongful conduct," the Amended Complaint must allege that Plaintiffs purchased non-medical protective face masks because they relied upon some representation by the Defendants that the masks were subject to sales tax. Moreover, the Amended Complaint would need to contain allegations that Plaintiffs would not have purchased the masks, but for representations regarding sales tax. However, no such allegations are present here, and justifiable reliance is not supported. Thus, because Plaintiffs cannot demonstrate justifiable reliance, an essential causation element under the UTPCPL, their UTPCPL claim fail as a matter of law

Accordingly, Defendants' Motion to Dismiss, on the basis they did not engage in fraudulent, unfair, or deceptive conduct will be granted.

4. Allegations of Ascertainable Loss

Finally, Defendants contend that Plaintiffs' UTPCPL claim fails because they have not suffered an ascertainable loss. Specifically, they argue that, even if Defendants had collected sales tax that was not due, Plaintiffs would be entitled to a refund from the Department and would thus be made whole by following the statutory refund procedures set forth in the Tax

Code.  Therefore, Defendants contend that Plaintiffs chose not to seek refunds of sales tax they paid which they claim had not been due, and they cannot rely on this voluntary, manufactured "loss" to support their claims for penalties under the UTPCPL. Plaintiffs argue they suffered an ascertainable loss because they paid money they were not legally required to pay, thereby losing that money, as well as the retention and use of the same, which they otherwise would have had.

"[T]he UTPCPL requires that a plaintiff show that he has suffered, [as] a result of his justifiable reliance, an 'ascertainable loss of money or property, real or personal.'" *Corsale*, 412 F. Supp. 3d at 566 (quoting 73 P.S. § 201-9.2(a)).   With regards to the availability of a refund, in *Singh v. Wal-Mart Stores, Inc.*, No. 98-1613, 1999 U.S. Dist. LEXIS 8531, *26–27 (E.D. Pa. June 10, 1999), the plaintiff alleged that the defendant violated the UTPCPL when it initially declined to issue him a refund for a VCR he had purchased. *See id*. at *26. The retailer, however, subsequently offered a full refund, which the plaintiff refused. The court held the plaintiff had "not suffered an ascertainable economic loss" because a full refund had been offered. *Id*. at *27. *Singh* further held that a "brief delay" in providing a refund caused no damages.  *Id*. at *24.

Here, Plaintiffs did not avail themselves of the refund offered by the Department of Revenue.   Because they did not do so, it cannot be said that they suffered an ascertainable loss under the UTPCPL.  Without this critical component, Plaintiffs cannot state a claim under the UTPCPL.

Accordingly, Defendants' Motion to Dismiss, on the basis that Plaintiffs' did not sustain an ascertainable loss, will be granted.

B.  Voluntary Payment Doctrine

Defendants argue that Plaintiffs' UTPCPL claim is barred by the voluntary payment doctrine because Plaintiffs voluntarily paid any sales tax.  Plaintiffs contend that this doctrine

does not apply because it is not set forth in the text of the UTPCPL, the modern trend disfavors the defense in consumer protection cases given the broad protections intended by legislatures, and the facts as alleged do not align with the argument that Plaintiffs' payments were voluntary. Defendants respond that Plaintiffs offer no authority from Pennsylvania or the Third Circuit to support that the voluntary payment doctrine does not apply to consumer protection claims.

The voluntary payment doctrine is an affirmative defense and "applies ... in situations where the payment was made with full knowledge of all of the facts and without any suggestion that the payor was defrauded in making the payment." *Taylor, Bean & Whitaker Mortgage Corp. v. GMAC Mortgage Corp.*, 2007 WL 1114045, at *6, 2007 U.S. Dist. LEXIS 27061 at *20 (M.D. Fla. Apr. 12, 2007) (applying Pennsylvania law).  The court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam) *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013) (explaining that if affirmative defense appears on face of complaint, court can dismiss complaint under Rule 12(b)(6)), abrogated on other grounds by Coleman v. Tollefson, 575 U.S. 532 (2015).  "The voluntary payment doctrine is not properly considered at the motion to dismiss stage when the factual record is insufficient to determine its viability." *Gallo v. PHH Mortg. Corp.*, 916 F.Supp.2d 537, 553 (D.N.J. 2012); *see Prod. Source Int'l, LLC v. Foremost Signature Ins. Co.*, 234 F.Supp.3d 619, 625 (D.N.J. 2017) ("Application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary.").

Here, the face of the Amended Complaint does not provide a sufficient factual record to determine the viability of Defendants' affirmative defense under the voluntary payment doctrine.

Similarly, it would be premature for Court to opine on the legal viability of an affirmative defense at the motion to dismiss stage.

Accordingly, were the Court not dismissing the UTPCPL claims on the merits as discussed above, it would otherwise have denied Defendants' Motion to Dismiss on the basis of the voluntary payment doctrine as premature at this stage,.

IV. Conclusion

Following consideration of the foregoing, Defendants' Motion to Dismiss will be granted. As questions of law on the applicability of the UTPCPL to the facts as alleged predominate this Court's review of Plaintiffs' Amended Complaint, any amendment is deemed futile. Plaintiffs' Amended Complaint will be dismissed. A separate order will follow.

BY THE COURT:

Dated: June 7, 2021

_____
Marilyn J. Horan
United States District Judge